UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 01-2158 ADM/RLE

| | |
|---|---|
| ROBERT L. ROUILLARD,<br><br>Plaintiff,<br><br>JOHN E. POTTER, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE,<br><br>Defendant. | **RESPONSE TO MOTION TO ENFORCE SETTLEMENT** |

Contrary to Robert Rouillard's (Rouillard) motion, the United States Postal Service (USPS) performed the settlement agreement. It has also tried to improve Rouillard's employment situation by assigning him new duties, seeking assistance from his psychologist and a reasonable accommodation committee and preparing to hire a Qualified Rehabilitation Counselor (QRC) to assist after Department of Labor, Office of Workers Compensation, (OWCP) completes its reassessment of Rouillard's progressive vascular disease. Moreover, the Court did not retain jurisdiction to enforce a settlement. Therefore, Rouillard's motion should be denied.

**I. ROUILLARD'S CURRENT EMPLOYMENT.**

Contrary to the allegations, Rouillard is not doing the same work as when the case was tried and settled. Likewise, the motion erroneously alleges the USPS will not bring in a QRC. The USPS agreed to bring one in before the instant motion was served. The parties simply disagreed over when the QRC's assistance would be most beneficial. Rouillard wants the QRC now before OWCP completes

an evaluation of Rouillard's ability to work. The USPS wants the QRC brought in after this current round of medical evaluations completed.

As the Court may recall, Rouillard has a degenerative vascular disease that impairs the use of his hands. It is chronic and doctors discourage highly repetitive activities that involve use of his wrist and forearm. Indeed, the restrictions had so limited Rouillard that he could not perform productive work. Instead, he was supposed to answer a telephone.

In August 2003, Rouillard advised the USPS that he had met with his psychologist who had referred him to "Odyssey." Exhibit 1 at RR0014. This organization describes itself as aiming to "assist your efforts in finding new directions for the long term, NOT an employment service, it seeks to be a transitional service - one which bridges the space between endings and new beginnings." Exhibit 1 at RR0015. As Rouillard explained, Odyssey provided an "approach to retraining." Exhibit 1 at RR0014.[1] The organization recommended that Rouillard become a social worker. The USPS does not have any such positions and Rouillard has not brought in a QRC.

In December 2003, the reasonable accommodation committee met and discussed Rouillard's situation. Exhibit 2. It could not find a position that he could perform within his restrictions other than

[1]Although the Department of Labor may require retraining pursuant to the Federal Employees Compensation Act (FECA), a district court lacks jurisdiction to require it. infra.

the telephone job to which he was assigned. Like Rouillard, it declined to bring in a QRC relying instead on the previous work by a QRC. That work identified answering telephones as the only accommodation that was within Rouillard's ability to perform.

In addition to a review by the reasonable accommodation committee, the Plant Manager, David Seviola, has tried to find a vacant position for Rouillard. He and Rouillard reviewed these vacancies. Exhibit 1 at RR0008. After observing the work, Rouillard wrote that "each of the listed offered jobs are beyond the restrictions and physical capabilities I currently possess." Exhibit 1 at RR0013.

Regardless of the inability to place Rouillard in a vacant position, the Plant Manager has provided Rouillard new duties. For about 3-4 hours daily he is delivering mail that was routed to the wrong postal facility. After he began performing these new duties, the Plant Manager and others noticed that Rouillard was in better spirits. Exhibit 1. Hence, contrary to his lawyer's representations, Rouillard is not performing the same job as when this case was tried. Not only is Rouillard's work different, the OWCP has requested evaluations to determine the current status of Rouillard's ability to work.

Before, during and after the lawsuit, Rouillard pursued workers compensation benefits. Recently, the Department of Labor directed him to update his medical evaluations. Exhibit 1 at

RR0003. In November 2003, his treating physician updated an impairment rating. RR0025. Then, on May 11, 2004, Rouillard continued this process with another appointment. A report from that meeting has not been received.

Finally, in its continuing efforts to work with Rouillard, before the instant motion was served or filed, the USPS had agreed to bring in a QRC, or similarly qualified person, at its own expense to assess Rouillard's work situation. Exhibit 3. Based on past experience, the QRC will want the most current medical evaluations of Rouillard's physical abilities. Hence, USPS told Rouillard's counsel, that as soon as the latest round of evaluations was completed, it would provide a QRC. Although neither Rouillard nor the Postal Service has brought in a QRC, the motion erroneously alleges that the Postal Service will not bring in a QRC.

## II. PERFORMANCE OF THE SETTLEMENT AGREEMENT.

The settlement reached was reduced to writing and signed by the parties. Exhibit 4. The USPS agreed to pay $16,000 in

> full settlement and satisfaction of any and all claims, demands, rights, and causes of action of whatsoever kind and nature, arising from, and by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, damage to property and the consequences thereof, resulting, and to result, from the same subject matter that gave rise to the above-captioned lawsuit, including any claims for wrongful death, for which Plaintiff or his heirs, executors, administrators, or assigns, and each of them, now have or may hereafter acquire against the United

> States Postal Service, its agents, servants, and employees.

The agreement also provided:

> It is also agreed, by and among the parties, that the settlement amount of **SIXTEEN THOUSAND DOLLARS ($16,000) FOR PERSONAL INJURY AND EMOTIONAL DISTRESS** represents the entire amount of the compromise settlement and that the respective parties will each bear their own costs, fees, and expenses and that any attorneys fees owed by the Plaintiff will be paid out of the settlement amount and not in addition thereto.

Rouillard received the $16,000 and signed a release. Exhibit 5. None of his allegations establish that any provision of the settlement agreement was breached by the USPS. Indeed, although Rouillard alleges that the settlement agreement required that the USPS pay for a QRC, such a requirement was intentionally omitted from the agreement.

Before signing the settlement agreement, the parties discussed including in the settlement agreement a provision that a QRC would be brought in and rejected such a provision. On August 28, 2003, Counsel for the USPS wrote:

> I have revised the settlement agreement. Although I considered your request to include the language of Judge Montgomery's Order in the agreement, the language was never part of the agreement.[2] Moreover, as you recall, we talked about funding that is available to your client to pay for QRC type services. By including the language in the agreement, I would be opening the door for Mr. Rouillard to tag the U.S. Postal Service for the

---

[2]The Order referred to is set forth in the transcript that Rouillard attached to his motion.

expenses, which was never part of the agreement.

Exhibit 6. Without incorporating anything concerning a QRC, Rouillard signed the settlement agreement and, after obtaining a copy of the transcript, signed a release. Consequently, the provision requiring a QRC merged into the final written agreement, was deleted from that agreement, and his claim based on a settlement agreement is barred. Because that contract does not make the USPS responsible for bringing in a QRC, as alleged by Rouillard, it is an inadequate basis for an order requiring the USPS to do so or to award Rouillard attorney fees.

## III. JURISDICTION IS LACKING.

Although the USPS has tried to comply with the Court's well-meant admonition to the parties to resolve the employment situation, which was placed on the record, the Court must address whether it had and has jurisdiction. Even if this requirement was part of the settlement agreement, as Rouillard alleges, the court lacks jurisdiction because an action to enforce a settlement agreement must establish ancillary jurisdiction. Moreover, the court lacked jurisdiction to enter an order requiring the USPS to bring in a QRC to resolve an employment dispute. Consequently, the instant motion should be dismissed.

### A. The Court Lacks Jurisdiction Over the Instant Motion.

"Enforcement of a settlement agreement . . . whether through an award of damages or decree of specific performance, is more than

the continuation or renewal of the dismissed suit and hence requires its own basis for jurisdiction." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 378 (1994); Miener by Miener v. Missouri Dept. of Mental Health, 62 F.3d 1126 (8th Cir. 1995); Sheng v. Starkey Laboratories, Inc., 53 F.3d 192,195 (8th Cir. 1995); Deretech v. City of St. Francis, 149 F.3d 1187 (8th Cir. 1998)(unpublished). Absent an order retaining jurisdiction or a judgment incorporating the settlement, the court did not retain jurisdiction to enforce the agreement. *See* Schaefer Fan Co., Inc. v. J & D Manufacturing, 265 F.3d 1282, 1287 (8th Cir. 2001); Consolidation Coal Co. v. Dept. of Interior, 43 F. Supp.2d 857, 862 (S.D. Ohio 1999). Here, the final judgment dismisses the action with prejudice. Moreover, it did not expressly retain jurisdiction. As a result, the Court lacks jurisdiction to consider Rouillard's current motion, which is also a collateral attack on the FECA process.

**B. The Court Lacked Jurisdiction to Order the USPS to Bring in a QRC to Resolve a FECA Dispute.**

FECA requires that the USPS provide a claimant, like Rouillard, work even if under the Rehabilitation Act, it could legally terminate his employment.[3] Here, the OWCP, which enforces this obligation, contracted with a QRC to assist the instant

[3]The USPS has satisfied its obligations to provide a reasonable accommodation. This obligation, however, does not require retraining or counseling.

parties in creating work for Rouillard that was within his medical restrictions. As a result of this investigation and assessment, Rouillard was offered work answering telephones. In the instant motion, Rouillard asks the Court to have another QRC brought in to assess the same medical condition for which he seeks FECA benefits, which is beyond the Court's jurisdiction. 5 U.S.C. § 8128(b); Master v. Runyon, 149 F.3d 855 (8th Cir. 2001).

FECA is a limited waiver of sovereign immunity in which only the OWCP possesses jurisdiction to administer and resolve FECA claims. Id.; Morris v. Roche, 182 F.2d 1260, 1275 (M.D. Ga. 2002). The District Courts are not granted such authority. Because bringing a QRC into a federal workplace is an integral element of processing an employee's FECA claim, it is beyond this Court's jurisdiction and FECA's limited waiver of sovereign immunity. As a result, even if the instant motion is converted into one to enforce a court order, the Court lacks jurisdiction because it lacked jurisdiction to enter such an order.

**IV. ROUILLARD FAILS TO STATE A CLAIM FOR ATTORNEY FEES.**

Regardless of whether the Court has jurisdiction, Rouillard fails to state a claim under the Equal Access to Justice Act (EAJA), which is the only applicable waiver of sovereign immunity for attorney fees. This Act, 28 U.S.C. § 2412(d)(1)(A), provides:

> a court shall award to a prevailing party other than the United States fees and other expenses. . . incurred by that party in any civil action (other than cases sounding in tort) . . . brought by or

> against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Id. Here, Rouillard does not seek attorney fees incurred in a "civil action." Instead, he seeks them for negotiating with the USPS. Moreover, as stated above, the Court does not have jurisdiction and the USPS position is substantially justified.

Although in limited circumstances administrative adjudications may qualify for an award pursuant to EAJA, neither Rouillard nor the USPS commenced such an adjudication. *See* Lane v. United States Department of Agriculture, 120 F.3d 106, 108 (8th Cir. 1997). Moreover, the USPS position was substantially justified.

In this case, the issue is and always has been when should a QRC be brought in and who should pay for it. The issue has never been whether one should be brought in. There were several existing avenues to exhaust before bringing one into the facility. First, there was Dr. Pelletier, Rouillard's treating psychologist, who referred Rouillard to Odyssey, which proved unsuccessful. Second, there was the Reasonable Accommodation Committee, which also proved unsuccessful. Third, Rouillard had additional medical resources that had performed the service for him in the past.[4] Fourth, as

---

[4]Rouillard previously brought an occupational therapist in Midsota Plastic Surgery. He continues to be treated by this organization, which continues to identify an "occupational therapist" in its letter head. This professional previously performed the same work as a QRC. Rouillard, however, has not

the USPS prepared to bring in a QRC, OWCP began to reassess Rouillard's medical condition, which is degenerative. Therefore, the USPS reasonably decided to wait until the assessment concluded before bringing in the QRC.

In addition to exhausting various professional options, the USPS also continued to work with Rouillard to provide him additional duties. The Plant Manager met with him and sent him vacancy notices. Although Rouillard was unable to perform these existing vacant jobs, the ongoing discussions resulted in assigning Rouillard the additional duties of correcting misdelivered mail. As a result, despite the lack of success with professional services, the USPS has in good faith worked with Rouillard to better his employment situation. Its position was substantially justified under the law and in fact.

## V. CONCLUSION

For the foregoing reasons, this Court should dismiss Rouillard's Motion to Enforce Settlement.

Dated: 7-12-04

THOMAS B. HEFFELFINGER
United States Attorney

s/Lonnie F. Bryan

BY: LONNIE F. BRYAN
Assistant U.S. Attorney
Attorney ID Number 206635
600 U.S. Courthouse
300 S. Fourth Street
Minneapolis, MN 55415
(612) 664-5600

---

sought his assistance again.